## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

**CASSALEE ECCLES,**

      **Plaintiff,**                                **CASE NO. _____**

**v.**

**3M COMPANY, individually and d/b/a**           *Plaintiff Demands a*
**USA 3M COMPANY, KCI USA, INC. and**     *Trial By Jury*
**ANTHONY MIGLIORE,**

_____

## COMPLAINT

Plaintiff CASSALEE ECCLES ("**Plaintiff**") sues Defendant 3M COMPANY individually and d/b/a USA 3M COMPANY, Defendant KCI USA, Inc. and ANTHONY MIGLIORE ("**Defendant MIGLIORE**") (collectively "**Defendants**"), and alleges as follows:

### NATURE OF THE CASE

1.    This action seeks damages for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* ("**Title VII**"), Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("**Section 1981**"), and for battery.

### PARTIES, JURISDICTION, AND VENUE

2.    Plaintiff is an individual and resident of Broward County, Florida.

3.    Defendant 3M COMPANY is a foreign corporation with its principal place of business in San Antonio, Texas and is subject to the jurisdiction of this Court.

4.    At all times material, Defendant 3M COMPANY did and continues to do business as "USA 3M COMPANY."

5.     Defendant KCI USA, INC. is a foreign corporation with its principal place of business in Saint Paul, Minnesota and is subject to the jurisdiction of this Court.

6.     At all times material, Defendant 3M COMPANY and Defendant KCI USA, INC. (Collectively referred to herein as "**Company**") were Plaintiff's joint and/or sole employer.

7.     Defendant MIGLIORE is an individual and upon information and belief is a resident of Hillsborough County, Florida, and is subject to the jurisdiction of this Court.

8.     At all relevant times, Defendant Company maintained a service center in Broward County, Florida.

9.     Defendant Company employed no fewer than 15 or more persons at all relevant times and is therefore an employer as defined by Title VII.

10.    Defendant Company is also an employer within the meaning of Section 1981 at all relevant times.

11.    At all relevant times, Plaintiff maintained a home office in Broward County, Florida and worked remotely for Defendant COMPANY.

12.    At all relevant times, Plaintiff was employed by Defendant COMPANY and performed work for Defendant Company in Florida, including Broward, Miami-Dade, Palm Beach, Monroe, Collier, Lee, Charlotte, Glades, Desota and Sarasota Counties.

13.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 as the cause of action arises under federal statutes, to wit, Title VII and Section 1981.

14.    Venue is proper in the Fort Lauderdale, Florida Division of the Southern District of Florida pursuant to 28 U.S.C. §1391(b)(2) because all or a substantial part of the events giving rise to this action occurred in this judicial district.

## ADMINISTRATIVE PREREQUISITES

15.    On or about September 3, 2019, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("**EEOC**") against Defendant COMPANY.

16. On or about October 22, 2020, the EEOC issued Plaintiff a Notice of Right to Sue.

17. This case was initiated within 90 days of Plaintiff's receipt of her Notice of Right to Sue from the EEOC.

## GENERAL ALLEGATIONS

18. Plaintiff is an African-American female.

19. Defendant COMPANY is a global corporation that manufactures medical devices and supplies related to wounds and wound healing.

20. On or about, January 7, 2013, Plaintiff was initially hired by Defendant COMPANY as a Territory Coordinator. Her position was subsequently renamed as Associate Territory Representative (ATR). In her roles at Defendant COMPANY, Plaintiff acted as a sales agent responsible for sales and marketing of Defendant's various medical devices.

21. Defendant MIGLIORE is a white male and was hired as a Sales Representative directly after college as first job with no job or career experience and promoted to District Manager in 2014. Defendant MIGLIORE held direct supervisory authority over Plaintiff, controlling various terms and conditions of Plaintiff's employment, until his retirement in or about February 2020.

22. John Seay ("**Seay**") is a white male, and at all relevant times was employed by Defendant COMPANY a Regional Vice President of Sales, and held direct supervisory authority over Plaintiff, controlling various terms and conditions of Plaintiff's employment.

23. Throughout her employment at Defendant COMPANY, Plaintiff's performance has been exemplary, and she has proven herself to be an exceptional and professional employee.

24.   Unfortunately, during the course of her employment at Defendant COMPANY, Plaintiff has been continuously subjected to race and gender discrimination and a hostile work environment.

25.   Defendant COMPANY's discriminatory treatment of Plaintiff started early in her employment, including but not limited to the following acts:

- On or about June 11, 2014, Plaintiff told Defendant MIGLIORE that she was interested in advancing her career with Defendant COMPANY.   Plaintiff approached Defendant MIGLIORE for his advice in how Plaintiff should pursue her goal. However, Defendant MIGLIORE was annoyed at Plaintiff's inclination, and told Plaintiff, "DO NOT CONCERN YOURSELF WITH THAT.   YOU ARE NOT IDEAL FOR [THAT POSITION] BECAUSE YOU ARE BLACK.   I DON'T THINK BLACK WOMEN ARE IDEAL CANDIDATES FOR [THAT ROLE]." Plaintiff was shocked and offended that Defendant MIGLIORE, Defendant's District Manager and Plaintiff's direct supervisor, would respond in such a way.   In response, Plaintiff retorted Defendant MIGLIORE's blatant discriminatory remarks and asked him why he felt that way.   Though, Defendant MIGLIORE had no interest in hearing Plaintiff further, telling her to shut up.   Plaintiff did not further respond or report the incident to Defendant COMPANY's Defendant COMPANY's Human Resources Department ("**HR Department**") because she was fearful retaliation and of losing her job.

- In or around June 2015, while working on a report late into the night, Defendant MIGLIORE told Plaintiff, "SOME PEOPLE ARE MEANT TO HAVE A SLAVE POSITION."

- On or about January 28, 2016, Defendant MIGLIORE told Plaintiff, during lunch together, "I KNOW YOU WANT TO BE PROMOTED, BUT I AM NOT

RECOMMENDING YOU FOR ANY PROMOTION BECAUSE I CAN'T SEE WHERE A BLACK GIRL IS GOING TO BE SUCCESSFUL IN THAT ROLE."

- On or about September 15, 2016, Defendant MIGLIORE told Plaintiff, "I DON'T THINK BLACK FEMALES SHOULD STRIVE TO BE PROMOTED IN MY TERRITORY."

- On or about December 16, 2016, Defendant MIGLIORE told Plaintiff, "I AM STILL NOT LOOKING TO PROMOTE YOU.   AS A BLACK WOMAN, YOU ARE NOT THE IDEAL CANDIDATE WE ARE LOOKING FOR."

- On or about April 10, 2017, Defendant MIGLIORE told Plaintiff, "BLACK REPS POSE CHALLENGES NO MATTER HOW GOOD THEY ARE—THEY JUST DON'T WORK OUT."   Defendant MIGLIORE also said, "BEING A BLACK FEMALE POSES EVEN TOUGHER CHALLENGES, AND I DON'T WANT TO HAVE TO DEAL WITH THAT—FOCUS ON READY CARE ADOPTION."

- On or about November 28, 2017, Defendant MIGLIORE told Plaintiff, "I WANT TO KEEP YOUR REACH TO A MINIMUM BECAUSE BLACK WOMEN ARE NOT SHARP."

- On or about December 11, 2017, Defendant MIGLIORE told Plaintiff, "BLACK PEOPLE—ESPECIALLY BLACK FEMALES—DO NOT RELATE TO CUSTOMERS WELL, SO I DON'T WANT TO PUT YOU OUT THERE."

26.   All of this discrimination and hostility took a toll on Plaintiff's well-being. Plaintiff suffered severe emotional distress due to the abuse and discrimination she endured and had to be treated at the hospital on two occasions for mental health and physical ailments as a result of the extreme emotional distress caused by Defendants' actions.   Additionally, Plaintiff's physician prescribed her with medication to reduce the symptoms of anxiety and

depressing she was facing as a result of the hostile work environment she was subjected to at her workplace.

27.   Defendant COMPANY's discrimination and hostile work environment continued — incessantly throughout her employment with Defendant COMPANY.   Indeed, Defendant MIGLIORE and Defendant COMPANY treated Plaintiff less favorably than non-Black and male.   For example:

- On or about January 25, 2018, Defendant MIGLIORE told Plaintiff, "AS I HAVE SAID BEFORE, YOU WILL NOT GET PROMOTED WITHOUT MY ASSISTANCE."   He said, "YOU SHOULD NOT FOCUS ON THIS BECAUSE I AM NOT ADVOCATING FOR YOU BECAUSE YOU ARE A BLACK GIRL. BLACK FEMALES ESPECIALLY DON'T RELATE WELL IN THIS FIELD."

- Defendant MIGLIORE gave Plaintiff poor performance evaluations when Plaintiff's performance exceeded her non-Black coworkers from 2014 to 2019.   Meanwhile, Defendant MIGLIORE gave Plaintiff's non-Black coworkers higher performance evaluations than Plaintiff even though she out-performed them.   Consequently, Defendant MIGLIORE also targeted Plaintiff for "coaching," which is a remedial, corrective instruction for employees who perform poorly.   For instance, on or about February 1, 2019, Defendant MIGLIORE sanctioned Plaintiff for coaching on a project she worked on together with a Hispanic co-worker.   While both employees were responsible for the final product, Defendant MIGLIORE did not select the Hispanic employee for coaching.   Similarly, on or about February 4, 2019, Plaintiff and a non-black coworker jointly worked on a project and were each responsible for its outcome.   Defendant MIGLIORE claimed to be displease with the outcome, and subjected Plaintiff for coaching, but did not do so for the non-black employee.

- Defendant MIGLIORE would grant non-black employees time off or overtime approvals without opposition, while Defendant MIGLIORE repeatedly delayed attending to or outright denied Plaintiff's requests.   For example, on or around January 16, 2018 Plaintiff requested two weeks off.   However, Defendant MIGLIORE only approved one week off.   Then, when Plaintiff asked why he would only approve one week off, Defendant MIGLIORE said something to the effect of, "Well, you provide great support to our team, and your time off would cripple our numbers."   When Plaintiff then asked Defendant MIGLIORE, "If that were the case, then why are others being paid three times more than I am?   Aren't they capable of working as well?"   Defendant MIGLIORE repeated his pretextual reason for denying Plaintiff's request, citing her sales numbers.   But then, Defendant MIGLIORE looked at Plaintiff and said, "DARKER SKINNED GIRLS ARE BETTER SERVED IN THE BACKGROUND.   JUST BE HAPPY THERE."

- Defendant MIGLIORE also humiliated Plaintiff on several conference calls, attempting to belittle Plaintiff, and projecting the facade of incompetence onto Plaintiff in front of her co-workers, including a nationwide ATR conference call on or about December 22, 2017 and a team conference call on or about January 9, 2018. For example, Defendant MIGLIORE would say something to the effect that "some people don't have sales acumen" after or before Plaintiff spoke during a call.   He would also target Plaintiff with negative remarks whenever Plaintiff's sales percentages were low but would not do the same for Plaintiff's co-workers.

- On or about January 9, 2019, after Plaintiff expressed interest in several open positions at the Company, Defendant MIGLIORE said, "WOMEN WITH THE COLOR OF YOUR EPI-DERMIS ARE NOT IDEAL CANDIDATES. DO YOU EVEN KNOW WHAT AN EPIDERMIS IS?"   Later that day Defendant

MIGLIORE told Plaintiff something to the effect of, "Cass you need to focus on your patients, I need you to be focused on helping patients. You don't have any sales experience in this industry. I need you to focus on your accounts."   Plaintiff pleaded with Defendant MIGLIORE, "you supported everyone else, why are you not supporting me?"   But, once again, Defendant MIGLIORE responded, "BLACK WOMEN ARE NOT THE RIGHT FIT FOR THIS POSITION.   CASS YOU SHOULD BE GRATEFUL FOR WHAT I ALLOWED YOU TO HAVE, AREN'T YOU GRATEFUL?"   Defendant MIGLIORE said, "Just help patients in your current role with transition.   I need at least 3 Veraflo referrals per day for the TMV (Territory Manager Vac), that is all I want you to do."   Defendant MIGLIORE further stated, "When you succeed, the TMV and TSV [Territory Sales representative] succeed, your efforts will be recognized, I need you to continue to work for the TMV and TSV, they need your support. You are very good at providing support so I need you to provide more support."   Plaintiff responded, "why can't I be rewarded for providing support and do well like others?"   Once again, Defendant MIGLIORE said, "DARKER SKINNED PEOPLE ARE BETTER TO SERVE AS AIDS."

- On or about April 27, 2019, Plaintiff attempted to ask Defendant MIGLIORE a work-related question when Defendant MIGLIORE snapped at Plaintiff and shockingly said, "CASS I HAVE NO TIME FOR THIS, BE A GOOD LITTLE BLACK GIRL AND CONTINUE TO DO YOUR JOB WELL AND SUPPORT THE OTHERS. SOMETIMES YOU DON'T HAVE TO BE AWARDED FOR YOUR EFFORTS TO BE RECOGNIZED."

28.    Defendant MIGLIORE's harassment and abuse of Plaintiff eventually became physical.   On or about January 24, 2019, during a meeting, Defendant MIGLIORE

intentionally and forcefully kicked Plaintiff below her right knee, presumably in order to get her attention. Plaintiff found this to be extremely humiliating and degrading.

29. The racial and gender discrimination and hostility Plaintiff endured was known by Defendant COMPANY. In particular, since 2014 and during the course of her employment Plaintiff complained many times directly to Defendant MIGLIORE about his discriminatory and retaliatory conduct. On one occasion, sometime in 2015, when Plaintiff confronted Defendant MIGLIORE about his inappropriate racist and sexist behavior, Defendant MIGLIORE shockingly told Plaintiff "NO ONE WOULD BELIEVE YOU. I CONTROL THEM." Despite her numerous complaints to Defendant MIGLIORE, he continued to discriminate and retaliate against and to subject Plaintiff to a hostile work environment.

30. In or about 2015, Plaintiff also complained to Seay, Defendant COMPANY's Regional Vice President of Sales, about Defendant MIGLIORE's discriminatory and retaliatory conduct. Seay was dismissive and did not appear to take her complaints seriously. When Plaintiff complained directly to Seay, he and Defendant COMPANY took no corrective action. Moreover, after Plaintiff complained to Seay, his tone and demeanor towards Plaintiff drastically changed, and thereafter he was often rude toward Plaintiff, including during group calls where he would often use a harsher tone and criticize Plaintiff in comparison to others.

31. Plaintiff also complained to Defendant COMPANY's HR Department about the incidents of inappropriate discriminatory behavior, and Defendant COMPANY's failure or refusal to promote her with the Company. In particular, in or about July 2019, prior to filing her EEOC Charge of Discrimination, Plaintiff tried to have her concerns about Defendant MIGLIORE's conduct addressed by Defendant COMPANY's HR Department. Plaintiff

sent multiple emails to Defendant COMPANY's HR Department complaining about the discrimination and the hostile work environment that she experienced.

32.     In response to her complaints to Defendant COMPANY's HR Department, Tracey Blakes ("**Blakes**"), Defendant COMPANY's Human Resources Senior Director, contacted Plaintiff to discuss her July 2019 complaint.   During her conversations and communications with Blakes, Plaintiff reiterated her complaints about the discrimination and hostile work environment that she experienced, and made it clear that she felt very uncomfortable working under and for Defendant MIGLIORE who was Plaintiff's direct supervisor, and she requested something be done about the situation.

33.     Subsequently, sometime later in July 2019, Blakes notified Plaintiff that the Company had completed its investigation and found no wrongdoing by Defendant MIGLIORE.   Blakes also told Plaintiff that her allegations about the kicking incident were "unfounded."   As a result, Defendant COMPANY took no corrective action against Defendant MIGLIORE.   In addition, despite her complaints and request to be separated from Defendant MIGLIORE, Plaintiff was forced to continue working with and under Defendant MIGLIORE even during the investigation.   Shockingly, when Plaintiff requested to be re-assigned to another supervisor, Defendant COMPANY's HR Department told Plaintiff that only her manager – in this case Defendant MIGLIORE – could approve her request for re-assignment.   Defendant COMPANY's HR Department also told Plaintiff that it did not have any other positions available for Plaintiff and refused her request.

34.     Upon information and belief, Defendant COMPANY did not fully investigate Plaintiff's complaints and took no corrective action against Defendant MIGLIORE. Defendant MIGLIORE was never disciplined for any of his bad conduct against Plaintiff and remained as Plaintiff's supervisor until he retired in or about February 2020.

35.   After Plaintiff's July 2019 complaint to Defendant COMPANY's HR Department, Defendant MIGLIORE's demeanor towards Plaintiff became even more hostile, and he was often rude and disrespectful toward Plaintiff for no reason at all and would refuse to assist or would take an unusually long time to respond to any work-related requests by Plaintiff.

36.   In addition to being subjected to a continuous practice of discriminatory treatment and a hostile work environment as set forth above, during the course of her employment for Defendant COMPANY, Plaintiff was wrongfully denied promotions within the company because of her race and/or gender, and/or because of her various complaints of discrimination and a hostile work environment.   In particular, Plaintiff applied for numerous promotions and other positions within the Company, all of which have been denied by Defendant COMPANY while other non-black or male co-workers with less experience and qualifications have been promoted.   For example, positions that Plaintiff applied for but were denied include, but are not limited to, the following positions:

- TSV Miami (Job #18627) -- applied 7/16/19
- TSV West Palm (Job #18312)- applied 5/6/19
- TSV Broward – applied 7/19
- TMV Miami East– applied 7/19
- TSV (Job #14098)   – applied 7/19
- TMV Miami– applied 7/19
- TMV East Miami – applied 2017
- TMV Miami– applied 9/25/17
- TSV Naples– applied 2/17
- TSV West Palm– applied 2016/17
- TSV Naples – applied 2015

37.   Moreover, not only was Plaintiff not promoted within the Company, Defendant MIGLIORE made clear to Plaintiff numerous times during her employment that she would not be considered for promotions and that she should not even bother applying for a promotion within the Company.

38.   In addition to being denied various promotions within the Company, Defendant MIGLIORE also retaliated against Plaintiff during the course of her employment with Defendant COMPANY in other ways, including but not limited to, giving Plaintiff unjustified poor performance evaluations, refusing to provide recommendations for promotions and job applications, unnecessarily delaying the correction of Plaintiff's time cards, refusing Plaintiff's request for flex time, arbitrarily changing Plaintiff's overtime hours, and delaying approval of Plaintiff's requests for time off.

39.   At all relevant times, Plaintiff was and continues to be qualified for the position she holds and for the various positions she sought with Defendant COMPANY.   In fact, Plaintiff has often been a top performer within her region, exceeding the sales of all other employees.

40.   Plaintiff further claims constructive and/or actual discharge to the extent Plaintiff is terminated from Plaintiff 's position as a result of the unlawful discrimination and retaliation.

41.   At all relevant times, Plaintiff claims a continuous practice of discriminatory treatment, hostile work environment, and retaliation

42.   The discriminatory conduct and hostile work environment as described and set forth above are just some examples of Defendant's unlawful conduct to which Plaintiff was subjected.

43.   Defendant COMPANY has exhibited a pattern and practice of unlawful discriminatory conduct.

44.     Defendants' unlawful actions and conduct were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights.

45.     At all relevant times, Defendant COMPANY's employees, including Defendant MIGLIORE, were acting as agents of the Company in their discriminatory treatment of Plaintiff.

46.     As a result of Defendants' unlawful conduct, Plaintiff suffered numerous injuries including economic and emotional damages.

47.     As a result of Defendants' unlawful acts and conduct, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

48.     As a result of Defendants' unlawful acts and conduct complained of herein, Plaintiff suffered and continues to suffer damages.

49.     Defendant COMPANY is either directly or vicariously responsible for the unlawful race and gender discrimination, hostile work environment and retaliation suffered by Plaintiff.

## COUNT I – DISCRIMINATION UNDER TITLE VII
### (Against Defendant 3M Company and Defendant KCI USA, Inc.)

50.     Plaintiff re-alleges the allegations of paragraphs 1 through 40 above.

51.     Title VII makes it unlawful for an employer to discriminate against an employee based on that person's race.

52.     As described and set forth above, during her employment with Defendant, Plaintiff was subjected to a hostile work environment and adverse and disparate treatment because of her race (African-American) and gender (female).   The discriminatory and disparate treatment of Plaintiff included, but was not limited to, the following acts: treating Plaintiff differently and less favorably from other employees who were not African-American and female; subjecting Plaintiff to a hostile work environment; refusing or failing to investigate and correct discriminatory comments and harassment disclosed by Plaintiff; and

denying Plaintiff various job promotions on the basis of her race, gender, and/or for complaining about the discriminatory conduct she endured at the workplace.

53.    The discriminatory actions of Defendant against Plaintiff, as described and set forth above, constitute an adverse employment action for purposes of Title VII.    In subjecting Plaintiff to adverse employment action on the basis of her race and/or gender, Defendant intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

54.    Defendant's alleged bases for its adverse employment actions and disparate treatment of Plaintiff are pretextual and asserted only to cover up the discriminatory nature of its conduct.   Even if Defendant could assert legitimate reasons for its adverse employment actions and disparate treatment of Plaintiff, including denying Plaintiff various job promotions, which reasons it did/does not have, Plaintiff's race and/or gender was the motivating factor in its adverse employment actions and disparate treatment to which she was subjected.

55.    As a result of Defendant's intentional discriminatory conduct in violation of Title VII, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.    Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.   Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

56.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiffs rights under Title VII.    Accordingly, Plaintiff also requests punitive damages as authorized by Title VII.

57.   Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment against Defendant for all damages suffered by Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages, emotional distress damages, punitive damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of Defendant's conduct in violation of Title VII.

### COUNT II – HOSTILE WORK ENVIRONMENT UNDER TITLE VII
### (Against Defendant 3M Company and Defendant KCI USA, Inc.)

58.   Plaintiff re-alleges the allegations of paragraphs 1 through 40 above.

59.   Title VII makes it unlawful for an employer to discriminate against an employee based on that person's race and prohibits inappropriate conduct in the workplace which leaves any person feeling harassed or discriminated against, due to that person's race.

60.   Defendant violated Plaintiff's rights under Title VII by creating and subjecting Plaintiff to a hostile work environment due to her race (African-American) and gender (female).   The harassing and discriminatory conduct included, but was not limited to, the following acts: permitting a work environment in which Plaintiff was subjected to insults, harassment, discrimination and intimidation because of her race and gender; subjecting Plaintiff to unwelcomed, offensive and harassing discriminatory conduct and comments, including permitting Defendant MIGLIORE to harass Plaintiff with the use of racial and gender epithets on a continual basis; and refusing or failing to investigate and correct the racially discriminatory comments and harassment disclosed by Plaintiff.

61.   The hostile work environment to which Plaintiff was subjected as described and set forth above altered the terms and conditions of Plaintiff's employment and created a discriminatorily abusive working environment in violation of Title VII.

62.   As a result of the hostile work environment, Plaintiff suffered a "tangible employment action" defined as a significant change in employment status, failure to promote, reassignment with significantly different responsibilities, and/or a decision causing a significant change in benefits.

49.   Plaintiff did not welcome the discriminatory conduct described above and advised Defendant MIGLIORE repeatedly that such conduct was not welcome and offensive.

50.   Defendant was notified about and was otherwise aware of the harassing and discriminatory conduct and comments directed at Plaintiff by Defendant MIGLIORE but failed to take appropriate corrective action.

51.   The harassment and discrimination directed at Plaintiff was sufficiently severe and pervasive so as to unreasonably interfere with her physical and/or psychological health, work performance and to create and intimidating, hostile and offensive working environment.

52.   Defendant is either directly or vicariously responsible for the hostile work environment and unlawful discrimination suffered by Plaintiff.

53.   As a result of the aforesaid harassment and Defendant's denial of various job promotions in violation of Title VII, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.   Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.   Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

54.   Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiffs rights under Title VII.   Accordingly, Plaintiff also requests punitive damages as authorized by Title VII.

55. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment against Defendant for all damages suffered by Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages, emotional distress damages, punitive damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of Defendant's conduct in violation of Title VII.

### COUNT III – RETALIATION UNDER TITLE VII
### (Against Defendant 3M Company and Defendant KCI USA, Inc.)

56. Plaintiff re-alleges the allegations of paragraphs 1 through 40 above.

57. Title VII prohibits retaliation against an employee for opposing conduct which would violate the terms of Title VII.

58. Plaintiff opposed discriminatory conduct by Defendant which is prohibited by Title VII when she complained to Defendant about the race and gender discrimination and hostile work environment that she was subjected to as described and set forth above.

59. Plaintiff's complaints about Defendant's unlawful and discriminatory actions, therefore, constituted protected activity under Title VII.

60. After expressing her opposition to the unlawful discriminatory conduct, Defendant retaliated against Plaintiff by among other things, giving Plaintiff poor performance evaluations and denying Plaintiff various job promotions. *See also* ¶¶ 30-31 above.

61. The adverse employment actions by Defendant were the result of Plaintiff's opposition to the discriminatory conduct to which she was subjected, in violation of Title VII.

62.     Defendant's alleged bases for its adverse employment actions against Plaintiff are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

63.     As a result of Defendant's retaliatory conduct in violation of Title VII, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.   Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

64.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiffs rights under Title VII.   Accordingly, Plaintiff also requests punitive damages as authorized by Title VII.

65.     Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment against Defendant for all damages suffered by Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages, emotional distress damages, punitive damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of Defendant's conduct in violation of Title VII.

### COUNT IV – DISCRIMINATION UNDER SECTION 1981
### (Against All Defendants)

66.     Plaintiff re-alleges the allegations of paragraphs 1 through 40 above.

67.     Section 1981 provides that "[a]ll persons. . . shall have the same right. . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit

of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. . ."   42 U.S.C. § 1981(a).

68.   As described and set forth above, during Plaintiff's employment with Defendant, Defendant engaged in unlawful employment practices that violated Section 1981 by discriminating against Plaintiff due to her race (African-American).    The harassing and discriminatory conduct included, but was not limited to, the following acts: treating Plaintiff differently and less favorably from other employees who were not African-American; subjecting Plaintiff to a hostile work environment; refusing or failing to investigate and correct discriminatory comments and harassment disclosed by Plaintiff; and denying Plaintiff various job promotions on the basis of her race, and/or for complaining about the discriminatory conduct she endured at the workplace.

69.   The discriminatory actions of Defendant against Plaintiff, as described and set forth above, constitute an adverse employment action for purposes Section 1981.   In subjecting Plaintiff to adverse employment action on the basis of her race, Defendant intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

70.   Defendant's alleged bases for its adverse employment actions and disparate treatment of Plaintiff are pretextual and asserted only to cover up the discriminatory nature of its conduct.   Even if Defendant could assert legitimate reasons for its employment actions and adverse and disparate treatment of Plaintiff, including denying Plaintiff various job promotions, which reasons it did/does not have, Plaintiff's race was the motivating factor in its employment actions and adverse and disparate treatment to which she was subjected.

71.   As a result of Defendant's intentional discriminatory conduct in violation of Section 1981, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.   Plaintiff has also

suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

72. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiffs rights under Section 1981. Accordingly, Plaintiff also requests punitive damages as authorized by Section 1981.

73. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment against Defendant for all damages suffered by Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages, emotional distress damages, and punitive damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of Defendant's conduct in violation of Section 1981.

## COUNT V -- HOSTILE WORK ENVIRONMENT UNDER SECTION 1981
### (Against All Defendants)

74. Plaintiff re-alleges the allegations of paragraphs 1 through 40 above.

75. Section 1981 provides that "[a]ll persons. . . shall have the same right. . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. . ." 42 U.S.C. § 1981(a).

76. Section 1981 makes it unlawful for an employer to discriminate against an employee based on that person's race and prohibits inappropriate conduct in the workplace which leaves any person feeling harassed or discriminated against, due to that person's race.

77.   Defendant violated Plaintiff's rights under Section 1981 by creating and subjecting Plaintiff to a hostile work environment due to her race (African-American).   The harassing and discriminatory conduct included, but was not limited to, the following acts: permitting a work environment in which Plaintiff was subjected to insults, harassment, discrimination and intimidation because of her race and gender; subjecting Plaintiff to unwelcomed, offensive and harassing discriminatory conduct and comments, including permitting Defendant MIGLIORE to harass Plaintiff with the use of racial and gender epithets on a continual basis; and refusing or failing to investigate and correct the racially discriminatory comments and harassment disclosed by Plaintiff.

78.   The hostile work environment to which Plaintiff was subjected as described and set forth above altered the terms and conditions of Plaintiff's employment and created a discriminatorily abusive working environment in violation of Section 1981.

79.   As a result of the hostile work environment, Plaintiff suffered a "tangible employment action" defined as a significant change in employment status, failure to promote, reassignment with significantly different responsibilities, and/or a decision causing a significant change in benefits.

80.   Plaintiff did not welcome the discriminatory conduct described above and advised Defendant MIGLIORE repeatedly that such conduct was not welcome and offensive.

81.   Defendant was notified about and was otherwise aware of the harassing and discriminatory conduct and comments directed at Plaintiff by Defendant MIGLIORE but failed to take appropriate corrective action.

82.   The harassment and discrimination directed at Plaintiff was sufficiently severe and pervasive so as to unreasonably interfere with her physical and/or psychological health, work performance and to create and intimidating, hostile and offensive working environment.

83.    Defendant is either directly or vicariously responsible for the hostile work environment and unlawful discrimination suffered by Plaintiff.

84.    As a result of the aforesaid harassment and Defendant's denial of various job promotions in violation of Section 1981, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.    Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.    Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

85.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiffs rights under Section 1981.    Accordingly, Plaintiff also requests punitive damages as authorized by Section 1981.

86.    Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment against Defendant for all damages suffered by Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages, emotional distress damages, and punitive damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of Defendant's conduct in violation of Section 1981.

## COUNT VI – RETALIATION UNDER SECTION 1981
### (Against All Defendants)

87.    Plaintiff re-alleges the allegations of paragraphs 1 through 40 above.

88.    Section 1981 prohibits retaliation against an employee for opposing conduct which would violate the terms of Section 1981.

89.   Plaintiff opposed discriminatory conduct by Defendant which is prohibited by Section 1981 when she complained to Defendant about the race discrimination and hostile work environment that she was subjected to as described and set forth above.

90.   Plaintiff's complaints about Defendant's unlawful and discriminatory actions, therefore, constituted protected activity under Section 1981.

91.   After expressing her opposition to the unlawful discriminatory conduct, Defendant retaliated against Plaintiff by, among other things, giving Plaintiff poor performance evaluations and denying Plaintiff various job promotions.  *See also* ¶¶ 30-31 above.

92.   The adverse employment actions by Defendant were the result of Plaintiff's opposition to the discriminatory conduct to which she was subjected, in violation of Section 1981.

93.   Defendant's alleged bases for its adverse employment actions against Plaintiff are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

94.   As a result of Defendant's retaliatory conduct in violation of Section 1981, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.   Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.   Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

95.   Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiffs rights under Section 1981.   Accordingly, Plaintiff also requests punitive damages as authorized by Section 1981.

96.   Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment against Defendant for all damages suffered by Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages, emotional distress damages, and punitive damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of Defendant's conduct in violation of Section 1981.

**COUNT VII – BATTERY**
**(Against Defendant Migliore)**

97.   Plaintiff re-alleges the allegations of paragraphs 1 through 40 above.

98.   Defendant MIGLIORE battered Plaintiff.   In particular, as described and set forth above, Defendant MIGLIORE kicked Plaintiff below her right knee during a meeting.

99.   Defendant MIGLIORE used his power and authority as Plaintiff's superior to carry out the battery described herein.

100.  At all relevant times, Defendant MIGLIORE was acting within his capacity as an employee of Defendant 3M.   As a result, Defendant Company is vicariously liable for the acts and conduct of Defendant MIGLIORE.

101.  As a result of Defendant MIGLIORE's battery, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

102.  The acts of Defendant MIGLIORE constitute battery for which Defendants are jointly and severally liable under Florida law.

103.  As a result of Defendant MIGLIORE's battery, Plaintiff has suffered and will continue to suffer damages, including but not limited to compensatory damages, pain and suffering damages, humiliation, embarrassment, and emotional distress damages.

104. At all relevant times, Defendant MIGLIORE's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's protected rights so as to support an award of punitive damages.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment against Defendant MIGLIORE, for all damages suffered by Plaintiff, including compensatory damages, pain and suffering damages, humiliation, embarrassment, and emotional distress damages, and punitive damages, plus interest, fees and costs, and any other remedies (monetary and/or equitable) allowable by law as a result of Defendant MIGLIORE's unlawful conduct.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues triable before a jury.

Dated:   December 18, 2020

**DEREK SMITH LAW GROUP, PLLC**
701 Brickell Ave, Suite 1310
Miami, FL 33131
Tel: (305) 946-1884

Caroline H. Miller, Esq.

*Counsel for Plaintiff*